# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| STATE OF MISSOURI, DAVID MASON, ANDREA MCCANN, JESSICA FISHER, AND PHILLIP FISHER, <br><br> *Plaintiffs*, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF COMMERCE, HOWARD W. LUTNICK in his official capacity as Secretary of Commerce, UNITED STATES CENSUS BUREAU, GEORGE COOK in his official capacity as Acting Director of the U.S. Census Bureau., <br><br> *Defendants*. | No. 4:26-cv-00131 (JAR) |

**MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE AS DEFENDANTS BY OCA-ASIAN PACIFIC AMERICAN ADVOCATES, MAKE THE ROAD NEW YORK, NEW YORK IMMIGRATION COALITION, AND FIEL HOUSTON**

## TABLE OF CONTENTS

PROPOSED INTERVENORS ................................................................................................... 2

ARGUMENT .................................................................................................................................. 4

    I.       Proposed Intervenors Are Entitled to Intervene as of Right. ....................................... 4

         A.      The Motion is Timely. ................................................................................... 4

         B.      Proposed Intervenors Have Significant and Strong Interests in Intervention.............. 6

         C.      Proposed Intervenors and Their Members Will Be Prejudiced If They Are Not Permitted to Intervene................................................................................. 8

         D.      Proposed Intervenors' Interests Are Not Adequately Protected by Defendants.......... 9

         E.      Proposed Intervenors Have Standing........................................................... 11

    II.      In the Alternative, the Court Should Grant Permissive Intervention. .......................... 13

CONCLUSION............................................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

*ACLU of Minnesota v. Tarek ibn Ziyad Academy*,
    643 F.3d 1088 (8th Cir. 2011) ............................................................................. 11, 12

*Berger v. North Carolina State Conference of the NAACP*,
    597 U.S. 179 (2022) .............................................................................................. 9, 10

*Berry v. Ashcroft*,
    No. 4:22-CV-00465-JAR, 2022 WL 1540287 (E.D. Mo. May 16, 2022) ............................ 5, 9

*Clark v. Putnam County*,
    168 F.3d 458 (11th Cir. 1999) ................................................................................ 9

*Department of Commerce v. New York*,
    588 U.S. 752 (2019) ............................................................................................... 11

*Department of Commerce v. U.S. House of Representatives*,
    525 U.S. 316 (1999) ............................................................................................... 6, 11

*Flynt v. Lombardi*,
    782 F.3d 963 (8th Cir. 2015) ................................................................................. 13

*Friends of the Boundary Waters Wilderness v. U.S. Army Corps of Engineers*,
    No. 19-cv-2493, 2020 WL 6262376 (D. Minn. Apr. 9, 2020) ................................. 5

*In re Uponor, Inc., F1807 Plumbing Fittings Products Liability Litigation*,
    716 F.3d 1057 (8th Cir. 2013) ............................................................................... 5

*Innova Specialties Inc. v. Parnell Laboratories (AUST) Pty, Ltd.*,
    No. 4:09-CV-0553-TCM, 2010 WL 2757287 (E.D. Mo. July 12, 2010) .............. 5

*Judicial Watch, Inc. v. Illinois State Board of Elections*,
    No. 24-cv-1867-SLE, 2024 WL 3454706 (N.D. Ill. July 18, 2024) ...................... 8

*Kansas Public Employees Retirement System v. Reimer & Koger Associates, Inc.*,
    60 F.3d 1304 (8th Cir. 1995) ................................................................................. 9

*Kobach v U.S. Election Assistance Commission*,
    No. 13-cv-4095, 2013 WL 6511874 (D. Kan. Dec. 12, 2013) .............................. 8

*Kravitz v. Department of Commerce*,
    366 F. Supp. 3d 681 (D. Md. 2019) ....................................................................... 12

*Little Rock School District v. Pulaski County Special School District No. 1*,
    738 F.2d 82 (8th Cir. 1984) ................................................................................... 8

*Mausolf v. Babbitt*,
    85 F.3d 1295 (8th Cir. 1996) ............................................................................................... 8, 9

*National Parks Conservation Association v. Environmental Protection Agency*,
    759 F.3d 969 (8th Cir. 2014) ............................................................................................. passim

*National Urban League v. Ross*,
    489 F. Supp. 3d 939 (N.D. Cal. 2020) ...................................................................................... 12

*New Life Evangelistic Center, Inc. v. City of St. Louis*,
    No. 4:15-CV-00395-JAR, 2015 WL 2383499 (E.D. Mo. May 19, 2015) ............................... 13

*New York v. United States Department of Commerce*,
    351 F. Supp. 3d 502 (S.D.N.Y. 2019) ...................................................................................... 12

*Painters District Council No. 2 v. Sutton Painting, LLC*,
    No. 4:11-CV-01953-AGF, 2012 WL 4435289 (E.D. Mo. Sept. 26, 2012) ............................... 6

*South Dakota v. Ubbelohde*,
    330 F.3d 1014 (8th Cir. 2003) ................................................................................................... 9

*Trbovich v. United Mine Workers of America*,
    404 U.S. 528 (1972) ................................................................................................................... 9

*Trump v. New York*,
    592 U.S. 125 (2020) ................................................................................................................. 10

*United States v. Metropolitan St. Louis Sewer District*,
    569 F.3d 829 (8th Cir. 2009) ..................................................................................................... 4

*United States v. Union Electric Co.*,
    64 F.3d 1152 (8th Cir. 1995) ................................................................................................ 6, 10

**Rules**

Fed. R. Civ. P. 24(b) ........................................................................................................................ 13

**Other Authorities**

Alejandra Jaramillo & Ethan Cohen, *Trump calls for a new census to exclude undocumented immigrants*, CNN, Aug. 7, 2025, https://perma.cc/8F7J-R6AB ..................... 10

## **INTRODUCTION**

Proposed Intervenors are non-profit, non-partisan membership organizations dedicated to mobilizing immigrant communities to advocate for their rights and needs. They seek to intervene as defendants both to vindicate the interests of their members and their own organizational interests. Assuming Plaintiffs' allegations are correct for purposes of this motion, if granted, Plaintiffs' requested relief will dilute the political power of Proposed Intervenors' members by removing many of their community members from the Census apportionment base for 2020 and/or 2030, resulting in reduced congressional representation and funding. The requested injunction would also injure Proposed Intervenors themselves by harming their core organizational interests in civic engagement through census participation efforts, forcing them to divert organizational resources to mitigate the harm to their outreach activities for the 2030 Census and/or any "re-conducting [of] the 2020 census enumeration." Compl. at 95 ¶ 4.

Proposed Intervenors' motion is timely and necessary to protect these vital interests of their members and themselves. Further, Defendants do not represent adequately Proposed Intervenors' interests in this case. In both of his administrations, President Trump has either sought to exclude or voiced support for the exclusion of undocumented immigrants and other categories of noncitizens from the Census apportionment base. Yet even if Defendants agreed with Proposed Intervenors on the merits, as government officials, Defendants represent a wider array of constituents and have different incentives than Proposed Intervenors and their members.

Proposed Intervenors satisfy each requirement for intervention as a matter of right under Rule 24(a)(2) and have Article III standing, so the Court should grant their motion. Alternatively, the Court should exercise its discretion to grant intervention on a permissive basis under Rule 24(b)(2).

1

## PROPOSED INTERVENORS

OCA-Asian Pacific American Advocates ("OCA") is a nonprofit membership organization whose mission is to advance the sociopolitical and holistic well-being of Asian Americans, Native Hawaiians, and Pacific Islanders ("AANHPIs") in the United States in a variety of areas, including civic engagement. *See* Ex. 1, Declaration of Thu Nguyen ("Nguyen Decl."), ¶ 10. OCA has over 35 chapters and affiliates across the United States, a total of approximately 200,000 members, including 1,544 dues-paying members, and over 1,500 voting members. *Id.* ¶¶ 3–5. OCA has dues-paying, voting members in every state except for five (Kansas, New Hampshire, Vermont, West Virginia, and Wyoming). *Id.* ¶ 7. Of the states that Plaintiffs allege will lose congressional representation should they prevail, OCA has 235 members in California, 207 in New York, and 130 in Texas, all of whom are dues-paying and voting members. *Id.* Because furthering AANHPI civic engagement and advancing the needs of AANHPIs is core to OCA's mission, OCA and its chapters have engaged in census outreach, voter registration, education, and mobilization efforts since at least the 2010 Census, and plan to do so again for the 2030 Census. *Id.* ¶ 13.

Make the Road New York ("MRNY") is a nonprofit membership organization dedicated to building the power of immigrant and working-class communities, with offices and service centers in New York City, White Plains, and Suffolk County, New York—all areas with significant undocumented and noncitizen populations. *See* Ex. 2, Declaration of Sienna Fontaine ("Fontaine Decl."), ¶¶ 2–3. It has almost 30,000 members in New York State, *id.* ¶ 3, which is one of the states Plaintiffs allege would lose congressional representation should they prevail. MRNY works to promote engagement with the U.S. Census to ensure that its members receive the government funding and political representation to which they are entitled, including through public education,

organizing, and person-to-person outreach. *Id.* ¶¶ 4–5. It engaged in extensive efforts for the 2020 Census and plans to do so again for the 2030 Census. *Id.* ¶¶ 5–6.

New York Immigration Coalition ("NYIC") is a non-profit umbrella policy and advocacy organization for nearly 200 groups in New York State, whose mission is to unite immigrants, members, and allies so that all New Yorkers can thrive. *See* Ex. 3, Declaration of Murad Awawdeh ("Awahdeh Decl."), ¶¶ 2–3. NYIC's members are dues-paying nonprofit organizations—some of them organizations with individual members—that are committed to advancing immigrant justice, empowerment, and integration. *Id.* ¶ 4. As an organization, NYIC has an ongoing commitment to promoting engagement in the Decennial Census among individuals served by its member organizations, including by rallying NYIC stakeholders, allies, and partners to form a statewide coalition in 2018 called "New York Counts 2020," whose mission was ensuring a full and accurate count for New York. *Id.* ¶¶ 5, 7–8. NYIC plans to spend approximately $4 million on community education and outreach efforts to work towards a complete and accurate count in the 2030 Census within the communities that it serves. *Id.* ¶¶ 9, 18.

FIEL Houston, Inc. ("FIEL") is a nonprofit membership organization based in Houston, Texas. *See* Ex. 4, Declaration of Cesar Espinosa ("Espinosa Decl."), ¶ 2. Its mission is to advocate for just laws for immigrants and their families, access to higher education for all people regardless of immigration status, and access to justice for the community. *Id.* FIEL has more than 60,000 members who reside in Harris County, Texas, and neighboring counties in the greater Houston metropolitan area, *id.* ¶ 4, and Texas is one of the states Plaintiffs allege would lose congressional representation should they prevail. FIEL has an ongoing commitment to promoting engagement in the Decennial Census among its members and constituents, stemming back to preparation for the 2010 Census, when it began educating immigrant communities on the importance of the Census.

3

*Id.* ¶ 6. Since then and looking toward the 2030 Census, FIEL has helped lead Get Out the Count efforts and other Census education initiatives in part because FIEL understands that immigrants and communities of color have been consistently and routinely undercounted by the Census. *Id.* ¶¶ 6–10.

## ARGUMENT

**I.     Proposed Intervenors Are Entitled to Intervene as of Right.**

Under Rule 24(a), "a court must permit anyone to intervene who: (1) files a timely motion to intervene; (2) claims an interest relating to the property or transaction that is the subject of the action; (3) is situated so that disposing of the action may, as a practical matter, impair or impede the movant's ability to protect that interest; and (4) is not adequately represented by the existing parties." *Nat'l Parks Conservation Ass'n v. EPA*, 759 F.3d 969, 975 (8th Cir. 2014) (internal quotation marks omitted). In addition, in the Eighth Circuit, "a party seeking to intervene must establish Article III standing in addition to the requirements of Rule 24." *United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 833 (8th Cir. 2009). "Rule 24 should be construed liberally, with all doubts resolved in favor of the proposed intervenor." *Nat'l Parks*, 759 F.3d at 975 (internal quotation marks omitted). Proposed Intervenors satisfy all the requirements under Rule 24(a) and have Article III standing, so they are entitled to intervene as of right.

**A.  The Motion is Timely.**

Proposed Intervenors' motion is timely. To evaluate timeliness, courts consider "(1) the extent the litigation has progressed at the time of the motion to intervene; (2) the prospective intervenor's knowledge of the litigation; (3) the reason for the delay in seeking intervention; and (4) whether the delay in seeking intervention may prejudice the existing parties." *In re Uponor,*

4

*Inc.*, *F1807 Plumbing Fittings Prod. Liab. Litig.*, 716 F.3d 1057, 1065 (8th Cir. 2013) (citation omitted).

Each of the timeliness factors weighs in favor of Proposed Intervenors. Proposed Intervenors filed this motion ten days after this case was filed, no substantive proceedings have taken place, and Defendants have not yet even entered their appearance. This Court has routinely found motions to intervene timely under these circumstances and those involving much more delay. *See*, *e.g.*, *Berry v. Ashcroft*, No. 4:22-CV-00465-JAR, 2022 WL 1540287, at *2 (E.D. Mo. May 16, 2022) (finding motions to intervene were "clearly timely" were they were "filed less than three weeks after the case began and before any discovery or responsive pleadings"); *Innova Specialties Inc. v. Parnell Lab'ys (AUST) Pty, Ltd.*, No. 4:09-CV-0553-TCM, 2010 WL 2757287, at *2 (E.D. Mo. July 12, 2010) (finding intervention timely because "[d]iscovery is not yet closed and no substantive motions have been filed"). Given that the litigation is still in the pleading stages with no substantive motions filed, and that Proposed Intervenors promptly filed this motion, intervention does not harm or prejudice any existing litigant. *See Friends of the Boundary Waters Wilderness v. U.S. Army Corps of Eng'rs*, No. 19-cv-2493, 2020 WL 6262376, at *5 (D. Minn. Apr. 9, 2020) ("[T]here is little likelihood that Plaintiffs or Defendants will be prejudiced by the timing of . . . intervention . . . at this early stage of the case."). Nor are there any unusual circumstances in this matter that bear on timeliness of intervention. And as explained more in depth *infra*, Proposed Intervenors would be prejudiced if they are denied the opportunity to intervene because they have significant and currently unprotected interests at stake in this litigation. Proposed Intervenors' motion is timely.

## B. Proposed Intervenors Have Significant and Strong Interests in Intervention.

To meet the interest requirement, a proposed intervenor must show "a recognized interest in the subject matter of the litigation." *Nat'l Parks*, 759 F.3d at 975–76. That interest must be "'substantial, direct, and legally protectable.'" *Painters Dist. Council No. 2 v. Sutton Painting, LLC*, No. 4:11-CV-01953-AGF, 2012 WL 4435289, at *2 (E.D. Mo. Sept. 26, 2012) (quoting *United States v. Union Elec. Co.*, 64 F.3d 1152, 1161 (8th Cir. 1995)).

Proposed Intervenors have significant interests in this litigation both on behalf of their members and as organizations. As part of their work, Proposed Intervenors advocate on behalf of immigrants, including undocumented immigrants and temporary visa holders, and perform substantial Census outreach and educational work that is central to their missions. *See* Espinosa Decl. ¶¶ 2–3; Fontaine Decl. ¶¶ 2, 4–5; Nguyen Decl. ¶¶ 9–11, 14; Awawdeh Decl. ¶¶ 2–3, 5–9. Proposed Intervenors also have members who reside and vote in states that would lose representation if Plaintiffs' allegations about the consequences of excluding some immigrant residents from the apportionment base are correct. *See* Espinosa Decl. ¶¶ 12–14; Fontaine Decl. ¶¶ 10–12; Nguyen Decl. ¶ 8. If this Court orders Plaintiffs' requested relief, Proposed Intervenors' members will face concrete harm due to loss of congressional seats and electoral votes in their states. *See Dep't of Com. v. U.S. House of Representatives*, 525 U.S. 316, 331–32 (1999) (holding individual voter's "expected loss of a Representative" to Congress "undoubtedly satisfies the injury-in-fact requirement of Article III standing," because "[w]ith one fewer Representative, Indiana residents' votes will be diluted").

As to Proposed Intervenors themselves, the organizations here have an interest in protecting a critical component of their core missions and related work: empowering and encouraging their community members to respond to the Census and ensuring that their members

6

are counted such that they receive commensurate political representation and funding. *See* Espinosa Decl. ¶ 6; Fontaine Decl. ¶ 4; Nguyen Decl. ¶¶ 10–14; Awawdeh Decl. ¶¶ 10–13. Census outreach and engagement work forms a key part of the civic engagement and mobilization missions of all Proposed Intervenors. *See id.* But if the Plaintiffs achieve their goal of excluding many immigrant residents from the apportionment base, this will frustrate those missions by making it harder to encourage community members to participate in the Census and with less success for more effort. *See* Espinosa Decl. ¶¶ 9–10; Fontaine Decl. ¶ 4; Nguyen Decl. ¶ 18; Awawdeh Decl. ¶¶ 16, 19. Thus, Proposed Intervenors risk being forced to divert critical resources from other organizational priorities to address the harms to their members that would flow from Plaintiffs' requested relief. *See* Espinosa Decl. ¶ 10; Fontaine Decl. ¶¶ 13–14; Nguyen Decl. ¶ 19; Awawdeh Decl. ¶¶ 17, 19.

For example, MRNY would have to spend its time and funding to update its existing Census materials, generate new programming, and conduct additional digital and in-person outreach to ensure the communities it serves participate in the 2030 Census. *See* Fontaine Decl. ¶¶ 13–14. NYIC would need to expend more resources on outreach efforts to community members about the Census and apply for more grants, taking resources away from priorities such as campaign planning and direct service work. Awawdeh Decl. ¶¶ 17, 19. FIEL would have to revise its census outreach materials, expand programming, and hire an additional organizer, which would all harm its other core programs, including access to higher education initiatives and school-based educational counseling for students and families. Espinosa Decl. ¶ 10. For OCA, the additional resources it would need to put into Census outreach would take away resources from helping its members register and turn out to vote and advocating for policies that help its communities including broadband access, gun violence prevention, access to healthcare, and education

7

opportunities. Nguyen Decl. ¶ 19. Courts routinely find that public interest organizations like Proposed Intervenors should be granted intervention in cases when they demonstrate harm to their core missions and activities of protecting the political representation and voting rights of their members. *See, e.g.*, *Jud. Watch, Inc. v. Ill. State Bd. of Elections*, No. 24-cv-1867-SLE, 2024 WL 3454706, at *4 (N.D. Ill. July 18, 2024) (union had protectable interest in protecting the rights of members and use of its own resources to protect them from removal from the voter rolls); *Kobach v U.S. Election Assistance Comm'n*, No. 13-cv-4095, 2013 WL 6511874, at *4 (D. Kan. Dec. 12, 2013) (allowing advocacy groups to intervene where interests broadly articulated as "either increasing participation in the democratic process, or protecting voting rights, or both, particularly amongst minority and underprivileged communities").

Proposed Intervenors thus articulate a significant protectible interest in intervention.

### C. Proposed Intervenors and Their Members Will Be Prejudiced If They Are Not Permitted to Intervene.

"Usually, Rule 24(a)'s third criterion is easy to satisfy, and the would-be intervenor faces a 'minimal burden' of showing that its interests are not adequately represented by the parties." *Mausolf v. Babbitt*, 85 F.3d 1295, 1303 (8th Cir. 1996) (citation omitted). Rule 24(a)(2)'s interest impairment prong "does not require . . . that [intervenors] demonstrate to a certainty that their interests *will* be impaired in the ongoing action. It requires only that they show that the disposition of the action *may* as a practical matter impair their interests." *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*, 738 F.2d 82, 84 (8th Cir. 1984) (citation modified). A proposed intervenor can meet this requirement if their interests "would be directly impacted" by the relief they request. *Nat'l Parks*, 759 F.3d at 976.

As discussed above, Proposed Intervenors are at risk of losing their ability to protect their interests and those of their members and thus will be prejudiced if intervention is denied. If

8

Proposed Intervenors are denied the ability to intervene in this case, their members risk loss of political representation, while Proposed Intervenors themselves risk injury to their core organizational interests and programs.

### D. Proposed Intervenors' Interests Are Not Adequately Protected by Defendants.

The existing parties in the litigation cannot protect Proposed Intervenors' interests. The demonstration of inadequacy of representation is "a minimal burden," *Nat'l Parks*, 759 F.3d at 976, and a proposed intervenor only need demonstrate that the existing representation "may be" inadequate, *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). *Accord Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 195 (2022) (noting that "[the Supreme] Court has described the Rule's test as presenting proposed intervenors with only a minimal challenge."); *Kansas Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc.*, 60 F.3d 1304, 1308 (8th Cir. 1995) ("This requirement is met by a minimal showing that representation 'may be' inadequate.").

The Eighth Circuit has recognized that government defendants "must represent the interests of all of its citizens, which often requires the government to weigh competing interests and favor one interest over another." *South Dakota v. Ubbelohde*, 330 F.3d 1014, 1025 (8th Cir. 2003); *accord Mausolf*, 85 F.3d at 1303 ("[E]ven the Government cannot always adequately represent conflicting interests at the same time."). Government officials may have divergent interests from intervening civil rights organizations—both because elected officials have competing goals beyond protecting civil rights and because those officials have an interest in "remain[ing] popular and effective leaders." *Clark v. Putnam Cnty.*, 168 F.3d 458, 461-62 (11th Cir. 1999) (alteration in original) (internal quotations omitted); *see also Berry v. Ashcroft*, No. 4:22-CV-00465-JAR, 2022 WL 1540287, at *3 (E.D. Mo. May 16, 2022) (granting intervention to Missouri voters in

9

redistricting case even where interests of voters "could theoretically be adequately represented by public officials" (citation omitted)).

Such is the case here. Defendants are federal officials that do not share Proposed Intervenors' distinct and particular interests in protecting their members and immigrant communities, regardless of legal status. *See* Espinosa Decl. ¶ 2; Fontaine Decl. ¶ 2; Nguyen Decl. ¶¶ 10–14; Awawdeh Decl. ¶ 3. Moreover, during his first term, President Trump attempted to exclude undocumented immigrants from the apportionment, *see Trump v. New York*, 592 U.S. 125, 129–30 (2020), and has recently called for excluding undocumented immigrants from the Census count once again, *see* Alejandra Jaramillo & Ethan Cohen, *Trump calls for a new census to exclude undocumented immigrants*, CNN, Aug. 7, 2025, https://perma.cc/8F7J-R6AB. In contrast, Proposed Intervenors are singlehandedly "focus[ed] on defending the [challenged policy] vigorously on the merits without an eye to crosscutting administrative concerns." *Berger*, 597 U.S. at 198. Especially at this early stage in the litigation, Proposed Intervenors have no such assurances that Defendants share this same approach to this litigation—indeed, Plaintiffs reference President Trump's support for their position. *See* Compl. ¶ 61. Even though it is not impossible that Proposed Intervenors and Defendants may share "a common legal goal," they do not have the same interests in this matter, and thus, there "is no existing party to this litigation who can adequately represent" Proposed Defendant-Intervenors' "identified interests." *United States v. Union Elec. Co.*, 64 F.3d 1152, 1170 (8th Cir. 1995).

Proposed Intervenors' interests therefore sufficiently diverge from the existing parties to satisfy Rule 24(a)(2).

### E. Proposed Intervenors Have Standing.

Finally, Proposed Intervenors have Article III standing. In considering motions to intervene as defendants, courts in this Circuit assess an intervenor's standing based on the impact of the relief sought by the plaintiff. *See Nat'l Parks*, 759 F.3d at 975 (granting intervention as a matter of right because "if the court grants the relief requested in the complaint, the threat of injury to [the intervenor] is real"); *ACLU of Minn. v. Tarek ibn Ziyad Academy*, 643 F.3d 1088, 1092–93 (8th Cir. 2011) (evaluating standing based on the effect of the plaintiff's requested relief). Proposed Intervenors "must clearly allege facts showing an injury in fact[,] . . . that the alleged injury is fairly traceable to the defendant's conduct[,] and that a favorable decision will likely redress the injury." *ACLU of Minn.*, 643 F.3d at 1093 (citation modified). In assessing standing, this Court "must construe the motion to intervene in favor of the prospective intervenor, accepting all material allegations as true." *Id.*

As to injury-in-fact, as discussed, the requested relief here poses direct risks to Proposed Intervenors: their members risk loss of political representation, while Proposed Intervenors themselves risk injury to their core organizational interests and programs. *See* Espinosa Decl. ¶¶ 10–12; Fontaine Decl. ¶¶ 10, 12–14; Nguyen Decl. ¶¶ 8, 17–18; Awawdeh Decl. ¶¶ 5, 16–17, 19. The Supreme Court has found this is a sufficient injury to support standing on multiple occasions. *See Dep't of Com. v. New York*, 588 U.S. 752, 764 (2019) (finding standing to challenge addition of citizenship question to 2020 Census, based on "diminishment of political representation, loss of federal funds, degradation of census data, and diversion of resources"); *U.S. House of Representatives*, 525 U.S. at 331–32 (holding that voters sufficiently alleged injury-in-fact due to the risk of their state's loss of a congressional seat). Like these cases, Proposed Intervenors have identified members who would be personally harmed by the requested relief due

11

to the loss of a congressional seat in their state, assuming Plaintiffs' allegations are correct. *See* Espinosa Decl. ¶ 13; Fontaine Decl. ¶ 12; Nguyen Decl. ¶ 8. Similarly, in prior census litigation (including some of these same Proposed Intervenors), courts held that organizations demonstrated injuries like the Plaintiffs here because the census change at issue "will cause them — indeed, already is causing them — to divert organizational resources away from their core missions and towards combating the negative effects of the citizenship question." *New York v. Dep't of Com.*, 351 F. Supp. 3d 502, 616 (S.D.N.Y.), *aff'd in part, rev'd in part on other grounds sub nom.*, *Dep't of Com. v. New York*, 588 U.S. 752 (2019); *see also Nat'l Urb. League v. Ross*, 489 F. Supp. 3d 939, 968–69 (N.D. Cal. 2020); *Kravitz v. Dep't of Com.*, 366 F. Supp. 3d 681, 742 (D. Md. 2019).

As to causation and redressability, Proposed Intervenors' interests will be directly harmed by the unprecedented relief Plaintiffs request, that is, to "redo the 2020 Census and 2021 Apportionment," with undocumented immigrants and temporary visa holders excluded. Compl. at 95 ¶ 4. Plaintiffs seek to upset the settled census and apportionment, and if successful, they will directly cause the injuries Proposed Intervenors fear, while a favorable ruling rejecting these outlandish theories would prevent any harm to Proposed Intervenors. It is of no moment that Proposed Intervenors would be harmed by the actions of Defendants in redoing the census and apportionment, rather than directly by Plaintiffs, because the Plaintiffs still seek an order mandating this outcome. *See ACLU of Minn.*, 643 F.3d at 1093 ("[W]hen the defendant will be compelled to cause the alleged injury to the intervenor if the plaintiff prevails, the intervenor satisfies the traceability requirement even though the defendant and the intervenor seek the same outcome in the case."). Proposed Intervenors have standing.

12

**II.  In the Alternative, the Court Should Grant Permissive Intervention.**

In the alternative, Proposed Intervenors also satisfy the requirements for permissive intervention under Rule 24. "On timely motion, the court may permit anyone to intervene who: has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The court may use its discretion to grant permissive intervention when the proposed intervenor can show "(1) an independent ground for jurisdiction, (2) timeliness of the motion, and (3) that the applicant's claim or defense and the main action have a question of law or fact in common." *Flynt v. Lombardi*, 782 F.3d 963, 966 (8th Cir. 2015); *see also New Life Evangelistic Ctr., Inc. v. City of St. Louis*, No. 4:15-CV-00395-JAR, 2015 WL 2383499, at *9 (E.D. Mo. May 19, 2015) (finding a "permissive right to intervene" "because, given the early stage of this litigation, their intervention would not unduly delay or prejudice the adjudication of the parties' rights").

These considerations favor granting permissive intervention here. First, Proposed Intervenors will assert defenses that squarely address the factual and legal premises of Plaintiffs' claims, as previewed in the accompanying proposed memorandum in support of their motion to dismiss. *See* Ex. 7. Second, there will be no prejudice to any existing party if Proposed Intervenors are permitted to intervene, nor will there be any delay, because this case was filed just ten days ago and is still in its early stages. *See supra* Section I.A. Proposed Intervenors can coordinate with Defendants to streamline briefing to the greatest extent possible to avoid any additional burden on the parties and the Court.

Finally, Proposed Intervenors represent the unique and particular interests of the very people who stand to be most harmed by Plaintiffs' suit—a perspective that Defendants cannot provide. *See* Espinosa Decl. ¶ 2; Fontaine Decl. ¶ 2; Nguyen Decl. ¶¶ 9–11, 13; Awawdeh Decl.

13

¶¶ 2–4. As noted above, *see supra* Section I.D, Proposed Intervenors have significantly different interests than Defendants in this matter, and refusing to permit intervention will deprive both the Court of this perspective and Proposed Intervenors of the chance to defend their significant and protectable interests in the litigation, *see supra* Sections I.B-C.

## CONCLUSION

For the reasons stated above, the Court should grant Proposed Intervenors' Motion to Intervene. The Court should further deem the proposed motion to dismiss as filed upon the granting of the Motion to Intervene.

Dated: February 9, 2026

Respectfully submitted,

*/s/ Gillian R. Wilcox*
Gillian R. Wilcox #61278(MO)
Jason A. Orr #56607(MO)
ACLU OF MISSOURI FOUNDATION
406 West 34th Street, Ste. 420
Kansas City, MO 64111
Phone: (816) 470-9938
Fax: (314) 652-3112
gwilcox@aclu-mo.org
jorr@aclu-mo.org

Kristin M. Mulvey #76060(MO)
Jonathan D. Schmid #74360(MO)
ACLU of Missouri Foundation
906 Olive Street, Suite 1130
St. Louis, MO 63101
Phone: (314) 652-3114
kmulvey@aclu-mo.org
jschmid@aclu-mo.org

John A. Freedman* #453075(DC)
Elisabeth S. Theodore* #1021029(DC)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., N.W.
Washington, D.C. 20001
Phone: (202) 942-5000
Fax: (202) 942-5999
john.freedman@arnoldporter.com

*/s/ Sophia Lin Lakin*
Sophia Lin Lakin* #5182076(NY)
Davin Rosborough* #4926895(NY)
Jonathan Topaz* #5671151(NY)
Ethan Herenstein* #5743034(NY)
William Hughes* #5867346(NY)
Theresa J. Lee* #5022769(NY)
Ming Cheung* #5647763(NY)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
Phone: (212) 549-2500
Fax: (332) 234-9285
slakin@aclu.org
drosborough@aclu.org
jtopaz@aclu.org
eherenstein@aclu.org
whughes@aclu.org
tlee@aclu.org
mcheung@aclu.org

Adriel I. Cepeda Derieux* #4919163(NY)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
915 15th St. NW
Washington, DC 20001
Phone: (740) 632-0671
acepedaderieux@aclu.org

14

elisabeth.theodore@arnoldporter.com

Niyati Shah #1659560(DC)
ASIAN AMERICANS ADVANCING
JUSTICE – AAJC
1620 L Street, NW, Suite 1050
Washington, D.C. 20036
(202) 296-2300
(202) 296-2318 (fax)
nshah@advancingjustice-aajc.org

Grayce Zelphin #279112(CA)
ACLU FOUNDATION OF
NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Phone: (415) 621-2493
Fax: (415) 255-1478
gzelphin@aclunc.org

Perry Grossman* #5382106(NY)
NEW YORK CIVIL LIBERTIES UNION
FOUNDATION
125 Broad St.
New York, NY 10004
Phone: 212.607.3347
Fax: (212) 607-3318
pgrossman@nyclu.org

Ashley Harris* #24123238(TX)
Thomas Buser-Clancy* #24078344(TX)
ACLU FOUNDATION OF
TEXAS, INC.
1018 Preston St.
Houston, TX 77002
Phone: (713) 942-8146
Fax: (713) 942-8966
aharris@aclutx.org
tbuser-clancy@aclutx.org

Julia A. Gomez* #316270(CA)
Peter J. Eliasberg* #189110(CA)
ACLU FOUNDATION OF SOUTHERN
CALIFORNIA
PO Box 811370
Los Angeles, CA 90081
Phone: (213) 977-9500
Fax: (213) 915-0219
jgomez@aclusocal.org
peliasberg@aclusocal.org

*Counsel for Proposed Intervenors OCA-Asian Pacific American Advocates, Make the Road New York, New York Immigration Coalition, and FIEL Houston*

*applications for admission pro hac vice forthcoming*