## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISON

| | |
|---|---|
| STATE OF MISSOURI, DAVID MASON, ANDREA MCCANN, JESSICA FISHER, and PHILLIP FISHER,<br><br>         Plaintiffs,<br><br>  v.<br><br>UNITED STATES DEPARTMENT OF COMMERCE, HOWARD W. LUTNICK in his official capacity as Secretary of Commerce, UNITED STATES CENSUS BUREAU, and GEORGE COOK in his official capacity as Acting Director of the U.S. Census Bureau,<br><br>         Defendants. | Case No. 4:26-cv-00131 (JAR) |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE AS DEFENDANTS BY NAACP, MISSOURI NAACP, SIREN, MIRA, H. VICTORIA MORGAN, GABE REISS, CARRIE NICOLAS, LUCIA ORNELAS, AND VERONICA ZAVALA

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 3

I.    Plaintiffs challenge the long-concluded 2020 Census and years-away 2030 Census..........3

II.   Proposed Intervenors would be harmed by Plaintiffs' proposed rule.................................4

LEGAL STANDARD ...................................................................................................... 7

ARGUMENT .................................................................................................................. 8

I.    Proposed Intervenors have Article III standing. ..........................................................8

      A.    The Organizational Intervenors have standing. ................................................ 8

      B.    Individual Intervenors have standing................................................................ 10

II.   Proposed Intervenors are entitled to intervene of right under Rule 24(a)(2). ...................11

      A.    The motion is timely. ....................................................................................... 11

      B.    Proposed Intervenors have significant interests that may be impaired by the
            disposition of this action. ................................................................................ 11

      C.    The existing parties do not adequately represent Proposed Intervenors.............. 12

III.  Alternatively, the Court should grant permissive intervention. .........................................14

CONCLUSION .............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Basel Action Network v. Mar. Admin.*,
370 F. Supp. 2d 57 (D.D.C. 2005) ................................................................. 8

*Berger v. N.C. State Conf. of the NAACP*,
597 U.S. 179 (2022) ...................................................................... 3, 12, 13

*Berry v. Ashcroft*,
No. 4:22-CV-00465-JAR, 2022 WL 1540287 (E.D. Mo. May 16, 2022) ...................... 15

*California ex rel. Lockyer v. United States*,
450 F.3d 436 (9th Cir. 2006) ....................................................................... 11

*City of San Jose v. Trump*,
497 F. Supp. 3d 680 (N.D. Cal. 2020) ........................................................ 3, 9

*Coffey v. Comm'r*,
663 F.3d 947 (8th Cir. 2011) ....................................................................... 15

*Dep't of Com. v. New York*,
588 U.S. 752 (2019).................................................................................... 10

*Dep't of Com. v. U.S. House of*,
*Reps.*, 525 U.S. 316 (1999) ....................................................................... 9, 11

*Est. of Lewis by & through Duran v. City of Columbus, Ohio*,
158 F.4th 814 (6th Cir. 2025) ..................................................................... 11

*Franconia Mins. (US) LLC v. United States*,
319 F.R.D. 261 (D. Minn. 2017).................................................................. 15

*Fund for Animals, Inc. v. Norton*,
322 F.3d 728 (D.C. Cir. 2003) .................................................................... 13

*Hunt v. Wash. State Apple Advert. Comm'n*,
432 U.S. 333 (1977) ..................................................................................... 8

*Kozak v. Wells*,
278 F.2d 104 (8th Cir. 1960) ...................................................................... 13

*Kravitz v. Dep't of Com.*,
336 F. Supp. 3d 545 (D. Md. 2018) ............................................................... 1

*Kravitz v. Dep't of Commerce*,
366 F. Supp. 3d 681 (D. Md. 2019) ......................................................... 9, 10

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
    591 U.S. 657 (2020) ................................................................................................ 7

*Nash v. Blunt*,
    140 F.R.D. 400 (W.D. Mo. 1992) .......................................................................... 14

*Nat'l Fed'n of the Blind of Mo. v. Cross*,
    184 F.3d 973 (8th Cir. 1999) .................................................................................. 10

*Nat'l Parks Conservation Ass'n v. U.S. E.P.A.*,
    759 F.3d 969 (8th Cir. 2014) .................................................................... 4, 7, 8, 14

*Nat'l Urb. League v. Ross*,
    489 F. Supp. 3d 939 (N.D. Cal. 2020) ................................................................... 10

*New York v. Trump*,
    485 F. Supp. 3d 422 (S.D.N.Y. 2020) .............................................................. 3, 10

*S. Dakota ex rel Barnett v. U.S. Dep't of Interior*,
    317 F.3d 783 (8th Cir. 2003) ............................................................................ 13, 15

*SEC v. Flight Transp. Corp.*,
    699 F.2d 943 (8th Cir. 1983) .................................................................................. 12

*Sierra Club v. Robertson*,
    960 F.2d 83 (8th Cir. 1992) .................................................................................... 13

*South Dakota v. Ubbelohde*,
    330 F.3d 1014 (8th Cir. 2008) .......................................................................... 13, 14

*Trbovich v. United Mine Workers*,
    404 U.S. 528 (1972) ............................................................................................... 12

*Trump v. New York*,
    592 U.S. 125 (2020) ...................................................................................... 1, 3, 4, 9

*U.S. House of Reps. v. U.S. Dep't of Com.*,
    11 F. Supp. 2d 76 (D.D.C. 1998) ........................................................................... 15

*United States v. Union Elec. Co.*,
    64 F.3d 1152 (8th Cir. 1995) .................................................................................. 11

*Univ. of S. Fla. Coll. Republicans v. Sec'y of Com.*,
    No. 8:25-cv-02486, 2026 WL 321256 (M.D. Fla. Feb. 3, 2026) ........................... 13

*Useche v. Trump*,
    No. 8:20-CV-02225-PX-PAH-ELH, 2020 WL 6545886 (D. Md. Nov. 6,
    2020) ..................................................................................................................... 3, 9

*Utah Ass'n of Cntys. v. Clinton*,
    255 F.3d 1246 (10th Cir. 2001) ................................................ 11

*Yniguez v. Arizona*,
    939 F.2d 727 (9th Cir. 1991) .................................................. 11

**Constitutional Provisions**

U.S. Const. amend. XIV, § 2 .......................................................... 1

U.S. Const. art. I, § 2, cl. 3 .......................................................... 1

**Rules**

Fed. R. Civ. P. 24 ............................................................... 7, 14, 15

**Regulations**

85 Fed. Reg. 44,679 (July 21, 2020) ................................................. 3

**Other Authorities**

Docket Order, *Univ. of S. Fla. Coll. Republicans v. Lutnick*, No. 8:25-cv-02486
    (M.D. Fla. Nov. 20, 2025), ECF No. 55 ........................................ 15

Tyler Pager, *Trump Demands Census Excluding Undocumented Immigrants Amid
    Redistricting Fight*, N.Y. Times (Aug. 7, 2025),
    https://www.nytimes.com/2025/08/07/us/politics/trump-census-undocumented-
    immigrants.html ................................................................. 12

## INTRODUCTION

The decennial Census is "a hallmark of our Constitution" that reflects our nation's commitment to an "accurate count" of persons living in each State and ensuring their "equal representation." *Kravitz v. Dep't of Com.*, 336 F. Supp. 3d 545, 551 (D. Md. 2018). While most obviously impacting the apportionment of congressional districts, the Census affects many aspects of public life, including "allocating federal funds to the States, providing information for intrastate redistricting, and supplying data for numerous initiatives conducted by governmental entities, businesses, and academic researchers." *Trump v. New York*, 592 U.S. 125, 129 (2020). The Constitution prescribes that the Census be conducted every ten years. U.S. Const. art. I, § 2, cl. 3.

The State of Missouri and four Missouri voters nonetheless ask this Court to compel an unprecedented mid-decade do-over of the 2020 Census and its ensuing congressional apportionment, this time excluding certain immigrants. They repeat the same demand for the upcoming 2030 Census and apportionment. Plaintiffs are not shy about their motives—they allege that apportionment is a "zero-sum game" where "one State's gain is another State's loss." Compl. ¶ 39. They thus seek to deprive voters in some States of their full suite of representatives in Congress and votes in the Electoral College, to the benefit of voters in other States. Plaintiffs also seek to reapportion power within Missouri itself, arguing that urban areas have too much sway in Missouri's legislature. The U.S. Constitution forbids this cynical maneuver. It requires apportionment based on the "whole number of ***persons*** in each state, excluding Indians not taxed." U.S. Const. amend. XIV, § 2 (emphasis added). Plaintiffs' claims are therefore meritless.

Plaintiffs' suit is a transparent effort to diminish the rights of certain communities, particularly immigrants, racial minorities, and voters in particular States. Proposed Intervenors—four civil rights organizations and five voters—seek to intervene in this matter to guard against this harm. The Organizational Intervenors are National Association for the Advancement of

1

Colored People ("NAACP"), NAACP Missouri State Conference ("Missouri NAACP"), Services, Immigrant Rights, and Education Network ("SIREN"), and Massachusetts Immigrant and Refugee Advocacy Coalition ("MIRA"). NAACP and Missouri NAACP serve the Black community and people of color nationwide and in Missouri, while SIREN and MIRA serve immigrants in California and Massachusetts, respectively. The Individual Intervenors are voters in California and Texas, two States that are likely to lose districts if Plaintiffs prevail here. Compl. ¶¶ 65, 73.

Proposed Intervenors meet all the requirements to intervene of right. To start, Proposed Intervenors have Article III standing because they and their members will lose representation if Plaintiffs win the relief they seek. The Organizational Intervenors will also suffer harm to their organizational missions, which include ensuring an accurate Census count to secure political representation and resources for their members and communities. For the same reasons, Proposed Intervenors have significant interests that could be severely impaired by this lawsuit, thus satisfying the cardinal element for intervention under Rule 24(a)(2).

Proposed Intervenors also meet the other elements of intervention of right. Their motion is timely, coming less than a month after suit was filed and before Defendants have appeared. And no party adequately represents Proposed Intervenors' interests. Indeed, the named Defendants in this matter—the Department of Commerce and Census Bureau—are part of a federal administration that has repeatedly sought to achieve through policy what Plaintiffs seek to achieve through litigation—excluding undocumented immigrants from the Census. Even if Defendants were to vigorously defend this suit—something Rule 24(a) does not require Proposed Intervenors to assume on blind faith—they would still not adequately represent Proposed Intervenors' interests because, as government officials, Defendants would have to "bear in mind broader public-policy implications," whereas Proposed Intervenors are narrowly focused on protecting *their*

representation and safeguarding *their* core organizational missions, "full stop." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 196 (2022) (citation omitted).

Alternatively, the Court should grant Proposed Intervenors permissive intervention to participate in this critically important lawsuit, which has nationwide implications. Proposed Intervenors raise defenses that share common questions of law and fact with the Complaint, and their participation will help the Court resolve the issues presented in this case without causing any undue prejudice or delay, as they agree to abide by any schedule set by the Court.

Because all the elements of intervention are met, the Court should grant the motion.

## BACKGROUND

### I.    Plaintiffs challenge the long-concluded 2020 Census and years-away 2030 Census.

Plaintiffs bring a tardy challenge to the 2020 Census and resulting apportionment and a premature challenge to the upcoming 2030 Census and apportionment. In Plaintiffs' telling, the Constitution limits apportionment to U.S. citizens and lawful permanent residents. But in recognition of the Constitution's plain text, the Census has always—from the founding to today—counted people without regard to immigration status. *See Trump*, 592 U.S. at 145–46 (Breyer, J., dissenting) (citing sources).

The inclusion of non-citizens in the reapportionment following the 2020 Census has already been the subject of substantial litigation. In July 2020, President Trump declared that "it is the policy of the United States to exclude from the apportionment base aliens who are not in a lawful immigration status." 85 Fed. Reg. 44,679, 44,680 (July 21, 2020). An array of states, organizations, and voters challenged that policy, and three federal courts found it unlawful. *See New York v. Trump*, 485 F. Supp. 3d 422, 468–77 (S.D.N.Y. 2020); *City of San Jose v. Trump*, 497 F. Supp. 3d 680, 715–43 (N.D. Cal. 2020); *Useche v. Trump*, No. 8:20-CV-02225-PX-PAH-ELH, 2020 WL 6545886, at *12–13 (D. Md. Nov. 6, 2020). Without reaching the merits, the

Supreme Court vacated those holdings because they were "premature" and relied on "speculation" regarding how the policy would be implemented. *See Trump*, 592 U.S. at 131–34. The ensuing reapportionment was ultimately based on the whole number of persons in each state.

Now, five years later, Plaintiffs allege that reapportionment was unlawful because it counted people other than "citizens and legal permanent residents." Compl. ¶ 19. Plaintiffs challenge the forthcoming 2030 Census and ensuing apportionment on the same basis. Plaintiffs ask this Court to order the federal government to re-do the 2020 Census, throw out the current apportionment of congressional districts nationwide, and then—for the first time in American history—reapportion districts without counting all residents of each state. *See* Compl. ¶ 95.

Plaintiffs also allege that Missouri's apportionment of *state* legislative districts is improper due to the inclusion of certain immigrants in Census data. Compl. ¶ 16. They thus seek to use revised Census data to force redistricting in the state and reduce the influence in the Missouri General Assembly of racially-diverse communities with substantial immigrant populations, such as Kansas City and St. Louis, in favor of communities with fewer immigrants. Compl. ¶ 76.

## II.    Proposed Intervenors would be harmed by Plaintiffs' proposed rule.

Proposed Intervenors will each be injured if Plaintiffs succeed in wresting representation away from the States and cities in which they vote and from the communities they serve.[1]

**NAACP.** NAACP is a nonpartisan, nonprofit civil rights organization with over 200,000 members nationwide. Specifically, it has approximately 12,000 members in California, more than 10,000 in Texas, more than 13,000 in New York, more than 5,200 in Illinois, almost 3,000 in Massachusetts, more than 6,400 in New Jersey, more than 7,700 in Maryland, and approximately

---

[1] The Court "must accept as true all material allegations in the motion to intervene." *Nat'l Parks Conservation Ass'n v. U.S. E.P.A.*, 759 F.3d 969, 973 (8th Cir. 2014). But should the Court find that declarations would be helpful, Proposed Intervenors stand ready to provide them upon request.

13,000 in North Carolina—all states that would lose districts under Plaintiffs' proposed rule. *See* Compl. ¶¶ 65, 73. NAACP is committed to ensuring Black people and all people of color are accurately counted in the Census and that apportionment fairly represents those communities. Because federal funding is often allocated based on Census data, an accurate count is vital for these communities to receive the critical resources and support they deserve. That is particularly crucial for NAACP because the communities it serves are often underrepresented in Census counts, skewing representation and resource allocation against them. NAACP thus committed significant resources to securing an accurate count in 2020, including through its Project 2020! initiative designed to educate the public and encourage Census participation. That project involved, among other things, community outreach and advertising, trainings, texting to targeted communities, a rapid response hotline, and social media amplification. In addition to harming NAACP's members, Plaintiffs' request for a redo of the 2020 Census would directly harm NAACP by undoing its prior efforts to encourage participation in that Census, requiring NAACP to divert resources from other critical activities—such as voter engagement—to yet again encourage Census participation.

***Missouri NAACP.*** Missouri NAACP is a chapter of NAACP, with approximately 2,700 members. Missouri NAACP is committed to ensuring that its members are fairly represented in both Congress and the Missouri General Assembly. Those efforts would be directly undermined if Plaintiffs succeed because they seek to force *intra*state redistricting in Missouri that would exclude certain categories of immigrants, skewing the results against Missouri's large urban areas—where immigrants are more likely to reside—and in favor of more rural areas. *E.g.*, Compl. ¶ 76. Since Missouri NAACP's members also disproportionately reside in the large urban areas of Missouri, such as St. Louis and Kansas City, this would dilute the effectiveness of those members' votes for the General Assembly and result in fewer resources being directed to their communities.

***SIREN.*** SIREN is a nonpartisan, nonprofit organization based in California. SIREN's mission is to empower immigrants and refugees. With roughly 120 members in California, SIREN works to ensure immigrants and refugees are accurately counted in the Census. As part of these efforts, SIREN advocated against inclusion of a citizenship question in the 2020 Census because it would have deterred many immigrants from participating in the Census and thus resulted in an undercount. SIREN also led education and outreach efforts to encourage immigrants to participate in the 2020 Census, which reached tens of thousands of people. If Plaintiffs win the relief they seek, the harms SIREN fought against in the run-up to the 2020 Census would come to fruition. In fact, the harms would be even *worse* now than in 2020 given the increasing anti-immigrant activities of the federal government, which would further deter many immigrants, including those with legal status, from participating in the Census. If the 2020 Census were re-done, SIREN would have to divert resources away from its other activities—including direct services and voter registration efforts—to again work to ensure as accurate a count as possible.

***MIRA.*** MIRA is a nonpartisan, nonprofit organization based in Massachusetts. Its mission is to convene, serve, and organize for the advancement of all immigrants across Massachusetts and beyond. Its members comprise aligned organizations in Massachusetts and neighboring states, including organizations that collectively count thousands of Massachusetts residents as members. MIRA works to ensure immigrants are accurately counted in the Census so that immigrants and the communities in which they reside receive the representation and resource allocation they deserve. As part of those efforts, MIRA dedicated substantial resources to encouraging participation in the 2020 Census, including hosting phone banking and text banking sessions, making over 276,000 phone calls, and leading educational and outreach training. If Plaintiffs win the relief they seek, MIRA's efforts to assure an accurate count in the 2020 Census would be

undone. And if the Census probed immigration status, many immigrants would be deterred from participating, further undermining MIRA's efforts to ensure an accurate count and skewing representation against the communities MIRA represents.

***Individual Intervenors.*** The Individual Intervenors are California voters H. Victoria Morgan and Gabe Reiss, as well as Texas voters Carrie Nicolas, Lucia Ornelas, and Veronica Zavala. Each votes regularly and intends to continue voting, including for Congress and President. A reapportionment that fails to count all persons would eliminate congressional districts in their states and thus reduce the effectiveness of their votes. *See* Compl. ¶¶ 65, 73.

## LEGAL STANDARD

A movant is entitled to intervene of right if (1) they "timely" moved to intervene; (2) they have "an interest relating to . . . the subject of the action" that may be "impair[ed] or impede[d]" by the disposition of the action; and (3) that interest "is not adequately represented by the existing parties." *Nat'l Parks*, 759 F.3d at 975; *see also* Fed. R. Civ. P. 24(a)(2). The Eighth Circuit also requires intervenors to have standing. *Nat'l Parks*, 759 F.3d at 975.[2]

The Court may also grant permissive intervention if the movant has "a claim or defense that shares with the main action a common question of law or fact" and intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b).

---

[2] The Eighth Circuit's standing requirement for all intervenors—plaintiff and defendant intervenors alike—is irreconcilable with subsequent Supreme Court precedent, which holds that an intervenor need only demonstrate standing "if it pursues relief that is broader than or different from the party invoking a court's jurisdiction." *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n.6 (2020). Proposed Intervenors do not seek relief "broader than or different from" Plaintiffs—indeed, they seek no relief at all beyond dismissal. Even so, Proposed Intervenors here satisfy the standing requirement.

"Rule 24 should be construed liberally, with all doubts resolved in favor of the proposed intervenor." *Nat'l Parks*, 759 F.3d at 975 (internal quotations omitted).[3]

## ARGUMENT

### III.    Proposed Intervenors have Article III standing.

Standing requires "(1) injury, (2) causation, and (3) redressability." *Nat'l Parks*, 759 F.3d at 974. Proposed Intervenors here meet all three standing elements because Plaintiffs' suit, if successful, would directly harm them and, in the case of the Organizational Intervenors, their members and broader communities.

### A.  The Organizational Intervenors have standing.

*Associational standing*. An entity has "associational" standing on behalf of its members where (i) those members "would otherwise have standing to sue in their own right"; (ii) "the interests it seeks to protect are germane to the organization's purpose"; and (iii) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). All elements are met here.

NAACP has over 70,000 members across the States Plaintiffs allege are likely to lose districts if Plaintiffs succeed; Missouri NAACP has 2,700 members in Missouri, who are likely to lose representation in the General Assembly under Plaintiffs' theory of the case; SIREN has 120 members in California likely to lose representation; and MIRA's members include organizations with thousands of members in Massachusetts likely to lose representation.[4] *See supra* Background

---

[3]  In compliance with Rule 24(c)'s requirement that an intervention be accompanied by a "pleading," Proposed Intervenors attach a proposed answer to this motion. *See* Exhibit 1. Proposed Intervenors reserve the right to file a Rule 12 motion by any deadline set by the Court or the Rules.

[4]  As an "association of associations," MIRA has standing on behalf of its organizational members, who in turn have standing on behalf of their members. *Basel Action Network v. Mar. Admin.*, 370 F. Supp. 2d 57, 69 (D.D.C. 2005) (citing *N.Y. State Club Ass'n v. N.Y.C.* 487 U.S. 1, 9 (1988)).

§ II. Those members would have standing in their own right for the same reasons that individual Plaintiffs allege standing to challenge the 2020 Census and resulting apportionment. *See* Compl. ¶ 67. As courts have recognized, "[w]hen a state anticipates losing a seat in Congress, that diminishment of political representation is a concrete injury suffered by both the state itself and its citizens." *Useche*, 2020 WL 6545886, at *4–7 (cleaned up)); *see also City of San Jose*, 497 F. Supp. 3d at 700–02 (similar).[5] As the Supreme Court has held, "voters have standing to challenge an apportionment statute because '[t]hey are asserting a plain, direct and adequate interest in maintaining the effectiveness of their votes.'" *Dep't of Com. v. U.S. House of Reps.*, 525 U.S. 316, 331–32 (1999) (quoting *Baker v. Carr*, 369 U.S. 186, 208 (1962)). If Plaintiffs succeed, the States in which NAACP's, SIREN's, and MIRA's members reside will likely have fewer congressional seats than they otherwise would, which "undoubtedly satisfies the injury-in-fact requirement of Article III standing." *Id*. Missouri NAACP's members will lose *state* representation; that "expected intrastate vote dilution" is also sufficient to give its members standing. *Id*. at 332–334.

The interests the Organizational Intervenors seek to protect here are also germane to their organizational purposes of ensuring accurate Census counts and fair apportionment for Black people and people of color, in the case of NAACP and Missouri NAACP, and immigrants and refugees, in the case of SIREN and MIRA. *See supra* Background § II. And "neither the claims asserted nor the relief requested in this [Census] litigation calls for significant participation by individual members." *Kravitz v. Dep't of Commerce*, 366 F. Supp. 3d 681, 741 (D. Md. 2019).

The other elements of standing—causation and redressability—are also readily met. Plaintiffs explicitly seek a reapportionment that would diminish congressional representation in

---

[5] The Supreme Court vacated those decisions because of "contingencies and speculation" about how the apportionment would ultimately be conducted, *Trump*, 592 U.S. at 131, 134, but it did not disturb the lower courts' holdings that a reduction in representation would be a cognizable harm.

the States and cities where the Organizational Intervenors' members vote, *see* Compl. at 95, and an order denying that relief would redress the injury.

    ***Organizational standing***. In addition to standing on behalf of their members, NAACP, SIREN, and MIRA also have standing based on "concrete and demonstrable injur[ies] to [their] activities which drains [their] resources and is more than simply a setback to [their] abstract social interests." *Nat'l Fed'n of the Blind of Mo. v. Cross*, 184 F.3d 973, 979 (8th Cir. 1999) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 n.19 (1982)).

    A redo of the 2020 Census would undo all the extensive efforts NAACP, SIREN, and MIRA undertook pertaining to that Census, forcing them to expend resources to again attempt to ensure an accurate count, at the direct expense of their other core activities. *See supra* Background § II. Even beyond the 2020 Census, Plaintiffs' relief would sabotage NAACP's, SIREN's, and MIRA's efforts to ensure an accurate Census count because asking about immigration status would deter people from participating in the Census, skewing the count against their constituent communities and depriving them of representation and resources. *See id*. The Supreme Court and other courts have found standing when entities alleged "a citizenship question will depress the census response rate and lead to an inaccurate population count," resulting in "diminishment of political representation, loss of federal funds, degradation of census data, and diversion of resources." *Dep't of Com. v. New York*, 588 U.S. 752, 766–67 (2019); *see also Nat'l Urb. League v. Ross*, 489 F. Supp. 3d 939, 968–69 (N.D. Cal. 2020); *New York*, 485 F. Supp. 3d at 460; *Kravitz*, 366 F. Supp. 3d at 742. Thus, NAACP, SIREN, and MIRA have standing here.

### B.  Individual Intervenors have standing.

    Individual Intervenors have standing for the same reasons that the Organizational Intervenors' members do. If Plaintiffs succeed, California and Texas—where Individual

10

Intervenors vote—will have fewer seats than they otherwise would. *See* Compl. ¶¶ 65, 73. Such diminishment of voting power is sufficient for standing. *Dep't of Com.*, 525 U.S. at 331–32.

## IV.    Proposed Intervenors are entitled to intervene of right under Rule 24(a)(2).

### A.    The motion is timely.

Proposed Intervenors' motion—filed less than a month after Plaintiffs sued and before Defendants have appeared—is timely. *See, e.g.*, *United States v. Union Elec. Co.*, 64 F.3d 1152, 1159 (8th Cir. 1995) (concluding motion to intervene was timely when it was filed more than four months after case began). Indeed, because no case schedule has even yet been set, there is no conceivable risk of prejudice to any existing party—the chief inquiry for timeliness. *See id*.

### B.    Proposed Intervenors have significant interests that may be impaired by the disposition of this action.

"[B]ecause Article III standing requirements are more stringent than those for intervention under Rule 24(a), a determination that intervenors have Article III standing compels the conclusion that they have the requisite interest under the rule." *Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1252 n.4 (10th Cir. 2001); *see also Yniguez v. Arizona*, 939 F.2d 727, 735 (9th Cir. 1991) (similar); *Est. of Lewis by & through Duran v. City of Columbus, Ohio*, 158 F.4th 814, 823 (6th Cir. 2025) (similar). For the same reasons they have standing, Proposed Intervenors have significant interests at stake under Rule 24(a). *See supra* Argument § I. The Organizational Intervenors have a further interest in safeguarding their efforts towards ensuring an accurate Census count and fair apportionment and allocation of federal funds. *See id*. Those interests would be impaired if Plaintiffs win the relief they seek. *See California ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006) ("Having found that appellants have a significant protectable interest, we have little difficulty concluding that the disposition of this case may, as a practical matter, affect it.").

### C.    The existing parties do not adequately represent Proposed Intervenors.

Far from adequately representing Proposed Intervenors' interests, the existing parties are openly hostile to such interests. The bar for demonstrating inadequate representation is low; movants need only show representation "may be" inadequate. *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). Even where the parties' interests "seem[] closely aligned," the burden to demonstrate inadequate representation is "minimal" unless those interests are truly "identical." *Berger*, 597 U.S. at 196 (citation omitted). Further, an intervenor's interest need not be "adverse" to those of the existing parties; it need only be "sufficiently 'disparate' to warrant intervention." *SEC v. Flight Transp. Corp.*, 699 F.2d 943, 948 (8th Cir. 1983) (quoting *Planned Parenthood of Minn., Inc. v. Citizens for Cmty. Action*, 558 F.2d 861, 870 (8th Cir. 1977)).

Applying these principles, Plaintiffs plainly do not adequately represent Proposed Intervenors' interests—they actively seek to harm those interests. *See* Compl. ¶ 39.

Nor do Defendants adequately represent Proposed Intervenors' interests. Indeed, they are part of an administration that has repeatedly tried to do just what Plaintiffs seek to accomplish in this litigation. In his first term, President Trump sought to exclude certain immigrants from reapportionment. *See supra* Background § I. In his second term, he ordered some Defendants here to begin an unprecedented mid-decade Census, posting on social media that "[p]eople who are in our Country illegally WILL NOT BE COUNTED IN THE CENSUS."[6] To that end, several Defendants here have recently represented that they are "preparing action in the next few months that may result in the dismissal" of another case seeking to exclude certain immigrants from the 2030 Census—hinting that they may soon announce a policy to exclude certain groups of

---

[6] Tyler Pager, *Trump Demands Census Excluding Undocumented Immigrants Amid Redistricting Fight*, N.Y. Times (Aug. 7, 2025), https://www.nytimes.com/2025/08/07/us/politics/trump-census-undocumented-immigrants.html.

immigrants from the Census count going forward. *See* Defs.' Opp. to Pls.' Mot. to Lift Stay, *Louisiana v. U.S. Dep't of Commerce*, 6:25-cv-00076 (W.D. La. Feb. 19, 2026), ECF No. 68. It is thus doubtful that Defendants will "doggedly defend[]" Proposed Intervenors' interests. *S. Dakota ex rel Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 786 (8th Cir. 2003). More likely, they will not defend them at all—or even capitulate outright.[7] Either way, Proposed Intervenors are not obliged to wait and see because Rule 24 does not demand a "positive showing" that representation will be inadequate, but rather "only that it may be inadequate." *Kozak v. Wells*, 278 F.2d 104, 110 (8th Cir. 1960) (cleaned up). Accordingly, "[d]oubts regarding the propriety of permitting intervention should be resolved in favor of allowing it[.]" *Sierra Club v. Robertson*, 960 F.2d 83, 86 (8th Cir. 1992). Here, the administration's views on the issue provides a more than adequate cloud of doubt that weighs in favor of permitting intervenors who will ensure a zealous defense.

Even where there is reason to believe that governmental defendants are *aligned* with plaintiffs, federal courts still "often conclude[] that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003). That is because public officials must "bear in mind broader public-policy implications," whereas private litigants seek to vindicate their own rights "full stop." *Berger*, 597 U.S. at 195–96 (citing *Trbovich*, 404 U.S. at 538–39). Simply put, a government defendant cannot adequately represent its citizens interests if it must "weigh competing interests and favor one interest over another." *South Dakota v. Ubbelohde*, 330 F.3d 1014, 1025 (8th Cir. 2008).

Even in the unlikely scenario where Defendants vigorously defend this suit, Plaintiffs seek to play a "zero-sum game" where "one State's gain is another State's loss." Compl. ¶ 39. That

---

[7] Indeed, in other recent Census litigation, the court granted a Rule 12 motion filed by intervenors when the government defendants chose *not* to move to dismiss. *See generally Univ. of S. Fla. Coll. Republicans v. Sec'y of Com.*, No. 8:25-cv-02486, 2026 WL 321256 (M.D. Fla. Feb. 3, 2026).

would require Defendants to "weigh competing interests and favor one interest over another"—to say nothing of the government's own interests they would have to consider. *Ubbelohde*, 330 F.3d at 1025. They would be "shirk[ing] [their] duty were [they] to advance the narrower interest of a private entity." *Nat'l Parks*, 759 F.3d at 977. Proposed Intervenors' and Defendants' interests thus "diverge" because Proposed Intervenors are focused on their "parochial" interests, whereas Defendants are "ultimately tasked with the much broader responsibility of" conducting the Census. *Id*. Proposed Intervenors thus meet all the Rule 24(a) requirements.[8]

Finally, the other pending motion to intervene has no impact on this one. The adequacy of representation prong only concerns the "***existing*** parties"—not other proposed intervenors. Fed. R. Civ. P. 24(a) (emphasis added). Further, none of the other proposed intervenors specifically focus on protecting the interests of Black voters, like NAACP; protecting Missourians against intrastate redistricting that would disadvantage large urban areas, like Missouri NAACP; and protecting immigrant communities in California and Massachusetts (two of the states likely to lose congressional representation according to Plaintiffs) like SIREN and MIRA, respectively. Nor are any of the other proposed intervenors actual voters, like Individual Intervenors. Accordingly, none adequately represent Proposed Intervenors' interests. Moreover, given the serious doubt that Defendants will zealously defend this suit, permitting groups of intervenors that represent different viewpoints will ensure "opposing viewpoints will continue to be presented to the court." *Nash v. Blunt*, 140 F.R.D. 400, 403 & n.3 (W.D. Mo. 1992).

## V.    Alternatively, the Court should grant permissive intervention.

The Court should, alternatively, grant permissive intervention, which is appropriate when (1) the motion is "timely"; (2) the defense shares "a common question of law or fact" with the

---

[8] Proposed Intervenors also "can provide expertise to the issues in this dispute" given their familiarity with the Census, further supporting intervention. *Nat'l Parks*, 759 F.3d at 977.

main action; and (3) intervention will not "unduly delay or prejudice" the original parties. Fed. R. Civ. P. 24(b). The third factor is the "principal consideration." *Barnett*, 317 F.3d at 787.

All these factors support intervention. *First*, this motion is timely. *See supra* Argument § II.A. *Second*, Proposed Intervenors' defenses share common questions of law and fact with the main action: they seek to defend this action on the merits and to assert defenses (such as laches and ripeness) to the relief Plaintiffs seek. *See* Ex. 1. *Third*, granting intervention will not cause undue delay or prejudice. In fact, since "[t]his case is in its earliest stages"—Defendants have yet to even appear—any "concerns related to rework or repetition are minimal." *Franconia Mins. (US) LLC v. United States*, 319 F.R.D. 261, 268 (D. Minn. 2017). The Court should thus grant permissive intervention. *See Coffey v. Comm'r*, 663 F.3d 947, 951 (8th Cir. 2011) (finding court abused discretion by denying intervention without finding undue delay or prejudice).

The nature of Proposed Intervenors' interests and the fact that this case raises issues of paramount national importance also bolsters the case for intervention. Indeed, it is "normal practice in reapportionment controversies to allow intervention of voters . . . supporting a position that could theoretically be adequately represented by public officials." *Berry v. Ashcroft*, No. 4:22-CV-00465-JAR, 2022 WL 1540287, at *3 (E.D. Mo. May 16, 2022). And courts regularly grant permissive intervention to civic organizations and voters to ensure their voices are heard in Census litigation. *See, e.g.*, Docket Order, *Univ. of S. Fla. Coll. Republicans v. Lutnick*, No. 8:25-cv-02486 (M.D. Fla. Nov. 20, 2025), ECF No. 55; *U.S. House of Reps. v. U.S. Dep't of Com.*, 11 F. Supp. 2d 76, 79 n.1 (D.D.C. 1998). These considerations reinforce the case for intervention.

## CONCLUSION

Proposed Intervenors respectfully request that this Court grant their motion to intervene.

Dated: February 27, 2026                    Respectfully submitted,

                                            */s/ J. Andrew Hirth*
                                            J. Andrew Hirth, #57807
                                            TGH LITIGATION LLC
                                            28 N. 8th St., Suite 200
                                            Columbia, MO 65201
                                            Telephone: (573) 256-2850
                                            andy@tghlitigation.com

                                            Abha Khanna*
                                            **ELIAS LAW GROUP LLP**
                                            1700 Seventh Avenue, Suite 2100
                                            Seattle, WA 98101
                                            Telephone: (206) 656-0177
                                            akhanna@elias.law

                                            David R. Fox*
                                            Christopher D. Dodge*
                                            Branden D. Lewiston*
                                            Kevin R. Kowalewski*
                                            **ELIAS LAW GROUP LLP**
                                            250 Massachusetts Ave NW, Suite 400
                                            Washington, DC 20001
                                            Telephone: (202) 968-4490
                                            dfox@elias.law
                                            cdodge@elias.law
                                            blewiston@elias.law
                                            kkowalewski@elias.law

                                            **Pro hac vice* applications forthcoming

                                            *Counsel for Proposed Intervenors*

16