**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| STATE OF MISSOURI, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF COMMERCE, *et al.*,<br><br>*Defendants*. | Case No. 4:26-cv-131-JAR |

**DEFENDANTS' RENEWED MOTION FOR A STAY**

In light of Defendants' issuance of a Notice of Proposed Rulemaking, Decennial Census of the Population of Americans; Proposed Residence Criteria and Proposed Regulations for Demographic Questions, 91 Fed. Reg. 57524 (Sep. 10, 2026) ("NPRM"), Defendants respectfully renew their request for the Court to stay this case in its entirety. Although the Court denied Defendants' prior motion for a stay, the Department of Commerce ("DOC") has now published in the Federal Register a NPRM that, if it were to be finalized in its current form, would obviate Plaintiffs' claims as to the 2030 Census. A temporary stay of proceedings, until the earlier of February 1, 2027, or the completion of the rulemaking process, is thus appropriate. With the requested stay, Defendants propose filing status reports every 90 days.

Defendants have conferred with Plaintiffs and Proposed Intervenors. Plaintiffs consent to this motion. Proposed NAACP Intervenors and Proposed OCA Intervenors take no position on the motion. Proposed LCLAA Intervenors oppose.

## BACKGROUND

As the Court is aware, this suit involves a challenge to certain residence criteria the U.S. Census Bureau ("the Bureau") used in conducting the 2020 Census, and the same residence criteria that Plaintiffs assume the Bureau will use in the 2030 Census. *See generally* Compl., ECF No. 1. Plaintiffs, the State of Missouri and four Missouri residents, *id.* ¶¶ 21–29, sued Defendants, DOC, the Bureau, Secretary of Commerce Howard Lutnick, and Acting Director of the U.S. Census Bureau George Cook in their official capacities, claiming that the Bureau violated (and will violate) Section 2 of the Fourteenth Amendment, Article II, Section 1 of the U.S. Constitution, and the Administrative Procedure Act by adopting a policy of including temporary visa holders and other noncitizens with a usual residence in the United States in the resident population count for the decennial Census (the "Residence Rule"). *See id.* ¶¶ 172–231.

Three sets of Proposed Intervenor-Defendants (collectively "Proposed Intervenors") filed separate motions to intervene, *see* ECF Nos. 11, 21, 51, and supporting memoranda, *see* ECF Nos. 12, 22, 52. The first motion is brought by the OCA-Asian Pacific American Advocates, Make the Road New York, New York Immigration Coalition, and FIEL Houston (collectively "OCA Intervenors"). *See* ECF No. 11. The second motion is brought by the National Association for the Advancement of Colored People ("NAACP"); the NAACP Missouri State Conference; Services, Immigrant Rights, and Education Network; Massachusetts Immigrant and Refugee Advocacy Coalition; and five individuals (collectively "NAACP Intervenors"). *See* ECF No. 21. The third motion is brought by the Labor Council for Latin American Advancement and three individuals (collectively "LCLAA Intervenors"). *See* ECF No. 51. Proposed Intervenors seek to intervene to defend against Plaintiffs' claims alongside Defendants as a matter of right under Federal Rule of Civil Procedure 24(a)(2) or permissively under Rule 24(b). *See* ECF Nos. 11 at 1, 21 at 1, & 51 at

1–2. Proposed LCLAA Intervenors also propose crossclaims against Defendants related to the 2030 Census. *See* ECF No. 51-1 ¶¶ 36, 41–48. All three motions to intervene remain pending.

On July 22, 2026, the Court denied Defendants' motion to stay the case, ECF No. 74, and extended Defendants' deadline to respond to the complaint through September 21, 2026. ECF No. 79. The Court determined that, in light of Defendants' submission of a proposed rule to the Office of Management and Budget in accordance with the prescribed review process, Defendants had "not provided adequate justification to entirely stay these proceedings for an indefinite duration of time while proposed rulemaking proceeds." ECF No. 79 at 5.

On September 10, 2026, the Bureau published the NPRM. Among other things, the NPRM proposes residence criteria that excludes "illegal aliens (among others)" from the apportionment count. 91 Fed. Reg. at 57526. As the NPRM identifies, "[t]his proposed set of criteria is different from—and excludes certain criteria that were included in—the set of residence criteria for 2020." *Id.* The NPRM's proposed residence criteria would count "[c]itizens of foreign countries who are also either citizens or lawful permanent residents of the United States as of April 1 of a decennial census year." *Id.* at 57529. It would not count, for apportionment, "[a]ll other citizens of foreign countries." *Id.*

## LEGAL STANDARD

A district court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997) (citing *Landis v. North American Co.*, 299 U.S. 248, 254 (1936)); *see also Sierra Club v. U.S. Army Corps. of Eng'rs*, 446 F.3d 808, 816–17 (8th Cir. 2006) (noting courts have discretion to stay judicial review "based upon ripeness considerations that do not deprive the court of jurisdiction"). "[A] trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay

of an action before it, pending resolution of independent proceedings which bear upon the case." *Hisler v. Gallaudet University*, 344 F. Supp. 2d 29, 35 (D.D.C. 2004) (quoting *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1979)). In exercising its judgment, a court must "weigh competing interests and maintain an even balance between the court's interests in judicial economy and any possible hardship to the parties." *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 732–33 (D.C. Cir. 2012) (citation modified). Thus, to determine whether to issue a stay, courts consider (1) harm to the nonmoving party if a stay does issue; (2) harm to the moving party if a stay does not issue; and (3) judicial economy. *Id.*

## ARGUMENT

Defendants acknowledge the Court's denial of their prior motion to stay this case, but respectfully renew their motion given DOC's issuance of the NPRM. Defendants seek a stay of litigation during a rulemaking that, if a rule is finalized as currently drafted, would moot Plaintiffs' claims as to the 2030 Census. Staying this case will not impose hardship on Plaintiffs, will free Defendants to focus their limited resources on that rulemaking, and will serve judicial economy by avoiding litigation of issues that may well be rendered moot.

### I. Plaintiffs will suffer no hardship.

In evaluating whether a stay will harm a non-moving party, courts consider whether there is "a fair possibility" that the non-moving party will suffer harm if the case is stayed. *Landis*, 299 U.S. at 255. Plaintiffs, the only non-moving party in this case, challenge the Bureau's policy of including temporary visa holders and undocumented noncitizens with a usual residence in the United States in the resident population count for the 2020 decennial Census, and the Bureau's potential use of that same policy for the 2030 decennial Census. *See, e.g.*, Compl. ¶¶ 57, 65, 71. Defendants, however, are actively developing a 2030 residence rule that the Bureau intends to

finalize and implement for the 2030 decennial Census. The NPRM departs from the challenged 2020 Residence Rule, 91 Fed. Reg. at 57526, and if finalized in its current form, would provide Plaintiffs the relief they seek as to the 2030 Census, *see* Compl. at 95–96. As to Plaintiffs' claims challenging the 2020 Census, Plaintiffs' own delay in bringing suit to challenge the methodology used in the 2020 Census nullifies any potential harm in postponing the final resolution of this case. Given that Defendants have taken concrete steps towards promulgating a rule that will moot some of Plaintiffs' claims and provide Plaintiffs part of the relief they seek, there is no "fair possibility" that Plaintiffs will suffer harm if this litigation is paused to allow Defendants the opportunity to complete the rulemaking process.

Proceeding with this litigation is unlikely to get Plaintiffs what they want any faster. Indeed, at least one district court has held that where an agency estimated issuing a notice of proposed rulemaking in no later than six months (which is less progress than Defendants have made here), it made "little sense for the [c]ourt to require the filing of the administrative record and merits briefs from both sides, and then to expend resources resolving legal issues that will likely be moot around the same time as it reaches a decision." *Chinatown Serv. Ctr. v. U.S. Dep't of Health & Hum. Servs.*, No. 21-331, 2021 WL 8316490, at *2 (D.D.C. Oct. 13, 2021); *see also Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*, No. CV 20-1630 (JEB), 2021 WL 4033072, at *2 (D.D.C. Sep. 3, 2021) (declining to lift stay because "lifting the stay is unlikely to either provide [p]laintiffs the relief they seek anytime soon or make efficient use of the [c]ourt's or the parties' resources"). The merits of Plaintiffs' claims have not yet been briefed in this case and are unlikely to be resolved before a final rule is issued.

Any argument that Defendants may delay issuing a final rule is too speculative to weigh in Plaintiffs' favor. There is a fair possibility of harm to non-movants in a request for a stay pending

rulemaking when an agency (1) provides no hint that its re-examination of a contested regulation during its rulemaking process would affect the contested issues, *Nat'l Wildlife Fed'n v. EPA*, 925 F.2d 470, 472 (D.C. Cir. 1991); *Asylumworks v. Mayorkas*, No. 30-cv-3815, 2021 WL 2227335, at *5 (D.D.C. June 1, 2021); or (2) is "unable to predict a timeframe for completion of [its] rulemaking process and therefore suggests no set duration for its proposed stay," *Garcia v. Credit One Bank, N.A.*, No. 2:18-CV-191, 2018 WL 11304605, at *2 (D. Nev. Oct. 3, 2018); *see also Asylumworks*, 2021 WL 2227335 at *5 (holding that a request for a stay pending an agency's tentative plan to engage in rulemaking that was premised on speculative administrative changes and judicial decisions was too speculative to warrant a stay). Here, the NPRM impacts Plaintiffs' claims as to the 2030 Census, and the Bureau is working expeditiously to issue a final rule. To ensure that rulemaking remains on track, Defendants propose to stay the case only until February 1, 2027, or the issuance of the final rule—whichever comes first—and to file status reports every 90 days during the pendency of the stay.

In sum, because the Bureau has provided clear indication that it plans to finalize a rule that may well address Plaintiffs' concerns as to the 2030 Census before this matter could be fully litigated, there is no "fair possibility" that a stay will harm Plaintiffs.

## II. A stay is necessary to prevent hardship to Defendants.

Defendants are likely to suffer hardship from proceeding with this litigation, as DOC and the Bureau have limited staff resources, and proceeding with this litigation would necessarily require either that the agency have the same staff who are working on the rulemaking divert time to assist the Department of Justice in this litigation or that the agency devote additional staff to develop duplicative expertise regarding the overlapping issues. As the Supreme Court has explained, "[i]f a Government official is to devote time to his or her duties, and to the formulation

of sound and responsible policies, it is counterproductive to require the substantial diversion that is attendant to participating in litigation and making informed decisions as to how it should proceed." *Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009). Here, requiring DOC and the Bureau to divert limited availability to assist in this litigation is counterproductive to their efforts to issue a final rule. Consequently, the hardship to DOC—substantially diverting towards this litigation its limited resources currently working to complete the rulemaking process, or diverting other staff to develop duplicative expertise on overlapping issues—weighs heavily in favor of granting this motion.

**III. A stay would serve judicial economy.**

Granting Defendants' motion would promote efficient use of the Court's resources. Courts have an interest in "avoiding unnecessary litigation that would burden its docket and hamper judicial economy." *Doe v. Sipper*, 869 F. Supp. 2d 113, 117 (D.D.C. 2012) (citation modified). As discussed above, Defendants are undertaking a rulemaking, which appears likely to obviate some of the issues in this litigation. It is widely recognized that it is more expeditious and efficient for an agency to proceed through its administrative process to address issues concerning its rules than it is to resort to the judicial process. *See B.J. Alan Co. v. ICC*, 897 F.2d 561, 562 n.1 (D.C. Cir. 1990) (stating in the context of agency reconsideration that "[a]dministrative reconsideration is a more expeditious and efficient means of achieving an adjustment of agency policy than is resort to the federal courts." (quoting *Pennsylvania v. ICC*, 590 F.2d 1187, 1194 (D.C. Cir. 1978))). For example, a rule adopted in an exercise of the agency's *discretion* may obviate any need to determine whether, as Plaintiffs claim, the Constitution *requires* the agency to exclude illegal aliens from the apportionment count. *See* 91 Fed. Reg. at 57526. Even if the final rule will not resolve all of Plaintiffs' claims, a stay of the entire case is warranted because "piecemealing claims

in this litigation will waste party and judicial resources and will require duplication of efforts to resolve closely related issues on separate occasions." *Ass'n of Irritated Residents v. Fred Schakel Dairy*, 634 F. Supp. 2d 1081, 1096 (E.D. Cal. 2008) (granting an agency's request for a stay pending agency rulemaking because the agency's final rule may affect portions of the plaintiff's claims). Because litigating the same issues that Defendants could resolve through the current rulemaking process is a waste of judicial resources, this factor heavily weighs in favor of granting a stay.

## CONCLUSION

A temporary stay of litigation until Defendants complete the pending rulemaking is warranted because the three factors a court considers in deciding a stay motion all weigh heavily in favor of granting the stay. Defendants respectfully request this Court to issue a temporary stay of this litigation until February 1, 2027, or until the completion of the rulemaking process, whichever is sooner, with Defendants to file status reports every 90 days.

Defendants separately request that the Court extend Defendants' September 21, 2026, deadline to respond to the Complaint until fourteen days after the Court's disposition of this Motion, unless the Court grants this Motion, in which event the deadline for Defendants' response to the Complaint would be stayed.

Dated: September 17, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ALEXANDER K. HAAS
Director

STEPHEN M. ELLIOTT
Assistant Branch Director

/s/ *Kathryn Alkire*
KATHRYN L. ALKIRE
1050146 (FL)
KEVIN K. BELL
967210 (GA)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Phone: (202) 451-7743
E-mail: Kathryn.L.Alkire@usdoj.gov

*Counsel for Defendants*